Emilyana Tussing

42 Otis Street, Apt. 301

San Francisco, CA 94102

Phone: (415) 632-2797 | (925) 339-9673 | (925) 727-4214

Emails: etussing01@outlook.com; e01302001@outlook.com

Plaintiff in Pro Per

FILED

OCT 17 2025

CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

# CV25-8940

LB

| | |
|---|---|
| EMILYANA TUSSING | Case Number: _____ |
| Plaintiff(s), | COMPLAINT FOR DAMAGES; INJUNCTIVE AND DECLARATORY RELIEF; |
| vs. | |
| LARKIN SREET YOUTH SERVICES; ST ANTHONY'S FOUNDATION; PETE RUSSELL; DOES 1-50 , inclusive | *(42 U.S.C. §§ 1983, 1985, 1986 ET SEQ.;CAL. CIV. CODE §§ 51.7, 52.1, 52.4 ET SEQ.)*; |
| Defendant(s). | AND DEMAND FOR JURY TRIAL |

## I.    INTRODUCTION

1.  This civil rights and personal injury action arises from the October 28, 2024 assault on
    Plaintiff **Emilyana Tussing** at the **Larkin Street Youth Services Center** in San
    Francisco, where she was violently dragged, disrobed, and humiliated by employees of
    **St. Anthony's Foundation**, with participation and failure to protect by **Larkin Street
    Youth Services** staff. Plaintiff seeks redress for physical injury, emotional trauma, civil
    rights violations, and continuing retaliation.

## II.    JURISDICTION AND VENUE

2. This action arises under the Constitution and laws of the United States, including 42 U.S.C. §§ 1983, 1985, and 1986, and the laws of the State of California.

3. Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331 and 1343 because this action seeks redress for violations of Plaintiff's federal constitutional and statutory rights.

4. Supplemental jurisdiction is proper under 28 U.S.C. § 1367 for all related state law claims arising from the same facts.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the events giving rise to the claims occurred within the City and County of San Francisco, California.

## III.    PARTIES

6. Plaintiff Emilyana Tussing ("Plaintiff") is, and at all relevant times was, a resident of San Francisco, California.

7. Defendant Larkin Street Youth Services ("Larkin Street") is a nonprofit corporation providing housing and supportive services for youth and young adults in San Francisco. Larkin Street operates as an official partner within the City and County of San Francisco's Coordinated Entry System for Homeless and At-Risk Youth. Through this public partnership, Larkin Street performs delegated public functions and therefore acted under color of law for purposes of 42 U.S.C. § 1983

8. Defendant St. Anthony's Foundation ("St. Anthony's") is a nonprofit corporation providing shelter, security, and social services to low-income and homeless individuals in San Francisco. On information and belief, St. Anthony's acted jointly and in concert with Larkin Street in operating and supervising facilities, including providing security or monitoring functions for a Larkin Street program site. By reason of this joint participation and its performance of delegated public functions, St. Anthony's acted under color of law within the meaning of 42 U.S.C. § 1983.

9. Defendant Pete Russell ("Russell") is an individual employed by St. Anthony's Foundation who, at all relevant times, acted within the course and scope of his employment and jointly with Larkin Street staff and supervisors. Russell is sued in his individual capacity for his direct participation in the unlawful acts alleged herein. Plaintiff is informed and believes that Pete Russell may be served c/o St. Anthony's Foundation, 150 Golden Gate Avenue, San Francisco, CA 94102, which was his place of employment at all relevant times. If Pete Russell is no longer employed by St. Anthony's Foundation, Plaintiff will seek his current work or service address through discovery or subpoena as permitted by the Federal Rules of Civil Procedure."

10. Defendants Does 1–50 are persons and/or entities whose true names and capacities are presently unknown. Plaintiff is informed and believes that each Doe Defendant was an employee, agent, representative, or joint actor with the named Defendants and is legally responsible for the acts and omissions described herein.

11. The term "entity defendants" refers to Larkin Street Youth Services and St. Anthony's Foundation. The term "individual defendants" refers to Pete Russell and Does 1–50. The

1
2
3
4

## IV.   FACTUAL ALLEGATIONS

5
6

12. Plaintiff Emilyana Tussing has depended on youth services in San Francisco, including those provided by Defendants, as a lifeline due to her homelessness. The Larkin Street Youth Center is intended to be a safe haven offering basic needs and respite for vulnerable youth like Plaintiff. Unfortunately, instead of safety, Plaintiff was subjected to shocking abuse and harassment at the hands of individuals associated with these very services. October 28, 2024 – Assault at Larkin Street Youth Center:15. On October 28, 2024, in the late afternoon (approximately 4:30–5:30 p.m.), Plaintiff was inside the Larkin Street Youth Center utilizing the designated indoor "nap nook" — a small area set aside for youth to rest.

13. DOE 1, an employee of ST. ANTHONY'S FOUNDATION,(at the time working within the Youth Center) entered the area and, ordered Plaintiff to leave immediately. Plaintiff informed DOE 1 that she was in the process of packing her belongings and was aware of the facility's closing. Without warning and without her consent suddenly entered the nap nook and violently shoved Plaintiff. Startled and frightened, Plaintiff immediately tried to remove herself from the situation. As she gathered her belongings to leave, a second male employee of St. Anthony Foundation approached in a manner that made Plaintiff fear an escalation. Plaintiff fled the building to escape the imminent danger.

14. The two male assailants followed Plaintiff out of the Youth Center and onto the public sidewalk. In front of the building — in broad daylight and in full view of approximately fifteen onlookers, including multiple Larkin Street Youth Services staff members — the assailants escalated their attack. A female staff member affiliated with Larkin Street Youth Services shouted at Plaintiff, "Get to steppin', white girl!", using a derogatory and racist slur. One of the male St. Anthony's employees then yelled, "Get off the block, bitch!" directed at Plaintiff. The two male attackers proceeded to grab Plaintiff by her arms and shoulders and drag her across the pavement against her will. They then threw her forcefully to the ground. Russell forcefully grabbed at Plaintiff's clothing – specifically, he seized the sleeve of the shirt she was wearing. Russell yanked and pulled with such force that Plaintiff's shirt was pulled over her head, exposing Plaintiff's bare chest.

15. Instinctively covering her chest, Plaintiff released her grip on her bags. The second male St. Anthony employee (Doe 1), immediately grabbed Plaintiff's bags containing her personal property. Doe 1 carried the bags to the corner of Golden Gate Avenue and Jones Street, crossed the street, and dumped the contents on the sidewalk. In the chaos of the assault and dispersal of her property, Plaintiff's phone and other items were lost or damaged.

16. . Because Plaintiff was in such extreme distress during the incident, she was unable to stop and pick up the items that were dropped or thrown around during the altercation inside and just outside the Youth Center. Her focus was on trying to reach the bags that had been forcibly taken from her. Plaintiff followed Doe 1 to the corner of Golden Gate Avenue and Jones Street, where her bags had been discarded. Upon reaching the corner, Plaintiff

experienced a severe panic attack, crying uncontrollably, hyperventilating, and trembling. She remained in this state for at least an hour.

17. Despite Plaintiff's obvious distress just yards away from the center's entrance, these staff members proceeded to close up the facility and lock the doors for the night without ever checking on Plaintiff's welfare or offering any assistance. No one tried to help retrieve and return any of Plaintiff's belongings. No one from the center came to her aid as she remained crying on the sidewalk; Plaintiff was effectively abandoned in a moment of crisis by those who were supposed to ensure the safety of youths at the center.

18. At no point did Plaintiff pose a threat or engage in unlawful behavior that would justify any use of force. Plaintiff was not armed, not violent, and was simply attempting to access services to which she was entitled. There was no legitimate reason for Defendants' employees to lay hands on Plaintiff or to forcefully remove her from the premises. On information and belief, the confrontation may have arisen from a misunderstanding or frustration by Defendants' staff, but rather than handling it professionally or compassionately, the staff chose to respond with brutality and bigotry. The force used against Plaintiff was excessive, unreasonable, and unlawful, far beyond any privilege or consent. Plaintiff had not consented to any physical contact. The actions of DOES 1 and 2 in dragging and disrobing her constituted outright battery and abuse. Likewise, the Larkin Street staff's participation by way of slurs and failure to intervene rendered the entire incident a gross violation of Plaintiff's rights and dignity.

**March 2025 – Harassing Contact by Assailant on Social Media**

1
2
3
4
5
6
7
8

19. In March 2025, Plaintiff experienced a new incident of intimidation related to the October 2024 assault. Specifically, on or about late March 2025, Plaintiff noticed an unsolicited comment on her personal Facebook page from Defendant Pete Russell – one of the individuals who attacked her. Previously, Plaintiff had updated her Facebook profile to reflect a change in her relationship status (indicating she was in a new relationship). Shortly thereafter, Pete Russell posted a public comment on that post stating: "Congratulations."

9
10
11
12
13
14
15
16
17
18
19
20
21
22

20. Given the context — that Pete Russell had physically assaulted and humiliated Plaintiff just a few months prior — Plaintiff perceived this online comment as a form of intimidation and harassment. The message was unnerving because Plaintiff had never given Pete Russell permission to contact her. The fact that her former assailant not only located her personal social media profile but also chose to publicly engage with her in a seemingly friendly manner made Plaintiff feel threatened. She interpreted the "Congratulations" comment as a cynical reminder of his presence in her life and possibly a veiled warning that he was watching her. This unexpected contact caused Plaintiff to relive the trauma of the assault and exacerbated her fear that Pete Russell (or others associated with him) might seek to harm or harass her again if she pursued any action or even tried to move on with her life. Plaintiff felt deeply unsafe and emotionally shaken by this incident.

23

## July 15, 2025 – Retaliatory and Discriminatory Treatment at the Center

24
25
26
27
28

21. On or about July 15, 2025, out of necessity, Plaintiff attempted to return to the Larkin Street Youth Center to obtain basic services (specifically, she was seeking access to clothing and a shower). Despite her lingering fear, her circumstances left her little choice but to go back to the Center for help. Upon arrival, Plaintiff complied with all staff instructions and center

rules. For example, staff instruct clients that they may take only one of each type of clothing item; Plaintiff adhered to this rule, carefully selecting only a single item of each kind that she needed.

22. Almost immediately, Plaintiff noticed that she was being closely monitored and singled out by multiple staff members. Two to three different staffers shadowed Plaintiff's movements and repeatedly approached her to enforce the one-item rule — even though Plaintiff was already following it. These staff members hovered around Plaintiff, scrutinizing her selections and admonishing her as if expecting her to violate the policy. Their tone and demeanor were accusatory and overly aggressive, far beyond normal enforcement of the rules.

23. Plaintiff observed that other youth clients were not treated in a similar manner. In one instance, Plaintiff saw another individual freely receiving multiple clothing items without any interference or scolding from staff. That person was allowed to gather needed items calmly, whereas Plaintiff was being harassed for no valid reason. The inconsistency was glaring and made Plaintiff feel that she was being targeted personally.

24. In addition to the hostile monitoring by staff, a newly assigned security guard at the center sat in a corner of the room fixated on Plaintiff. This guard continuously stared at Plaintiff in an intimidating manner. His gaze was not subtle or routine; it was clearly meant to make Plaintiff feel unwelcome and watched. The security guard's looming presence, combined with the staff's overbearing behavior, created an environment that was extremely hostile and frightening for Plaintiff.

25. Based on the history of what had transpired on October 28, 2024, and the subsequent online harassment in March 2025, Plaintiff perceived the treatment on July 15, 2025 as retaliatory and discriminatory. The staff and security personnel were treating her as though she were a troublemaker, when in fact she was a victim of an assault at their facility. Plaintiff reasonably believes that this harassment was in retaliation for her having been assaulted and presumably for any complaints or issues she raised as a result of that assault. It appeared to Plaintiff that Defendants' employees were intent on punishing or discouraging her from returning to the Center. The behavior also seemed discriminatory, possibly motivated by animus toward Plaintiff's race (as evidenced by the previous racial slur) or simply because she had stood up for herself and her rights after the initial incident.

26. . As a result of the hostile reception on July 15, 2025, Plaintiff again left the Center without receiving all the services she needed. She felt deeply humiliated, singled out, and unsafe. This ongoing pattern of harassment has continued to deprive Plaintiff of the equal access to services that she desperately requires. To this day, Plaintiff remains fearful of attempting to utilize homeless-youth services in San Francisco because the very organizations tasked with helping her have subjected her to violence, humiliation, and retaliation. The harm to Plaintiff is continuing, as she struggles to survive without consistent access to the support services from which she has been effectively banished by Defendants' conduct.

## Ongoing Intimidation/Harassment (2025)

27. Since the October 2024 assault, Plaintiff has encountered Defendant Pete Russelll on multiple occasions in and around the Larkin Street Youth Center, including when picking

1

2

3

4

5

6

up mail at the front desk, standing outside the Center, and walking down the block. During these encounters, Russell positioned himself nearby within Plaintiff's direct line of sight, made deliberate eye contact, and displayed an unsettling, smirking smile. Plaintiff perceived this conduct as intentional and intimidating and felt unsafe and uncomfortable.

7

8

9

10

11

12

13

14

15

16

17

28. On another occasion in 2025, while Plaintiff waited in line for breakfast with a friend, Russell again stood close by, made eye contact, and displayed the same unsettling smile. Plaintiff felt so uncomfortable that she left the line without eating. Russell had previously posted a comment on Plaintiff's personal Facebook page. Accordingly, Plaintiff knows he recognizes her identity, which reinforces her perception that these in-person encounters are purposeful rather than accidental. No one from Larkin Street or St. Anthony's has apologized or acknowledged the harm to Plaintiff; against that backdrop, Russell's behavior feels mocking, as if he believes he "got away with it." Plaintiff—who is female, experiencing homelessness, and dealing with addiction and mental-health challenge believes she is being targeted because of her vulnerability.

18

19

20

**September 2025 – Contact with Plaintiff's Mother Following Settlement Offer**

21

22

23

24

25

26

27

28

29. On or about September 21, 2025, shortly after Plaintiff sent a settlement demand letter in late August 2025 in an effort to resolve this matter before filing suit, Defendant Pete Russell sent a Facebook Messenger message directly to Plaintiff's mother. In that message, Russell introduced himself, referenced personal details about his life, and made a remark suggesting that he had been viewing or "stalking" Plaintiff's mother's Facebook profile. Given that Russell had no legitimate reason to contact Plaintiff's mother and the timing came only weeks after Plaintiff's settlement communication, Plaintiff reasonably perceived

the contact as a harassing and intimidating act intended to unsettle her and discourage

pursuit of legal action. A true and correct copy of the message will be available.

## V.    FEDERAL CAUSE OF ACTIONS

30. **COUNT I – 42 U.S.C. § 1983 (Excessive Force / Unreasonable Seizure)**

**(Against Pete Russell in his individual capacity, the entity defendants acting jointly**

**under color of law, and Does 1–50.)**

    1) Plaintiff incorporates by reference all preceding paragraphs.

    2) Defendants, acting under color of law, used unreasonable and excessive ,force.

    3) Plaintiff was physically assaulted, dragged, and disrobed without justification.

    4) The conduct violated Plaintiff's Fourth and Fourteenth Amendment rights.

    5) As a result, Plaintiff suffered physical and emotional injuries.

31. **COUNT II – 42 U.S.C. § 1983 (Equal Protection – Racial Discrimination)**

**(Against Pete Russell in his individual capacity, the entity defendants acting jointly**

**under color of law, and Does 1–50.)**

    1) Plaintiff incorporates by reference all preceding paragraphs.

    1) Defendants treated Plaintiff differently based on race, using  racial slurs during the

       assault.

    2) Defendants acted under color of law and with discriminatory intent.

    3) The conduct deprived Plaintiff of equal protection under the law.

1    4)  Plaintiff suffered humiliation, fear, and loss of services.

2

3    **32. COUNT III – 42 U.S.C. § 1983 (Deliberate Indifference / Failure to Protect)**

4    **(Against the entity defendants acting jointly under color of law and Does 1–50.)**

5

6    1)  Plaintiff incorporates by reference all preceding paragraphs.

7    2)  Defendants knew Plaintiff was in danger but failed to intervene or provide aid.

8    3)  Defendants had a special duty due to Plaintiff's vulnerability as a youth client.

9    4)  Their deliberate indifference caused Plaintiff harm and emotional trauma.

10

11   **33. COUNT IV – 42 U.S.C. § 1983 (Failure to Intervene)**

12   **(Against Pete Russell in his individual capacity, the entity defendants acting jointly under**

13   **color of law and Does 1–50.)**

14

15   1)  Plaintiff incorporates by reference all preceding paragraphs.

16   2)  Larkin Street staff witnessed the assault and failed to stop it.

17   3)  The failure to intervene resulted in constitutional violations and injury

18

19   **34. COUNT V – 42 U.S.C. § 1985(3) (Conspiracy to Interfere with Civil Rights)**

20   **(Against Pete Russell in his individual capacity, the entity defendants acting jointly under**

21   **color of law, and Does 1–50.)**

22

23   1)  Plaintiff incorporates by reference all preceding paragraphs.

24   2)  Two or more Defendants conspired to deprive Plaintiff of equal protection.

25   3)  The conspiracy was motivated by racial and discriminatory animus.

26   4)  Overt acts included the joint assault, slurs, and intimidation.

27   5)  Plaintiff suffered physical and emotional harm.

28

35. COUNT VI – 42 U.S.C. § 1986 (Neglect to Prevent)

(Against the entity defendants acting jointly under color of law, supervisory Does 1–25, and Does 26–50, inclusive.)

    1) Plaintiff incorporates by reference all preceding paragraphs.

    2) Supervisory Defendants knew of the conspiracy and failed to act.

    3) They had the power to prevent harm but neglected to do so.

    4) Plaintiff was injured due to this neglect

## VI.    STATE CAUSES OF ACTION

36. COUNT VII – BANE ACT (Cal. Civ. Code § 52.1)

(Against all Defendants)

    1) Plaintiff incorporates all preceding paragraphs.

    2) Defendants interfered, by threats, intimidation, or coercion, with Plaintiff's constitutional and statutory rights.

    3) Defendants' conduct—including physical assault, harassment, and discriminatory abuse—was intended to deter Plaintiff from asserting her rights to safety, dignity, and equal protection.

    4) Plaintiff suffered physical pain, humiliation, and emotional distress.

    5) **Damages sought:** Compensatory, statutory, and punitive damages, attorney's fees, and costs under Civil Code § 52.1(h).

37. COUNT VIII – RALPH CIVIL RIGHTS ACT (Cal. Civ. Code § 51.7)

(Against all Defendants)

    1) Plaintiff incorporates all preceding paragraphs.

2) Defendants committed or threatened acts of violence against Plaintiff based on race, gender, and protected status.

3) The violence and intimidation occurred while Plaintiff sought access to youth-center services.

4) Defendants acted willfully and maliciously, causing Plaintiff fear and humiliation.

5) **Damages sought:** Actual, statutory, and punitive damages; attorney's fees under Civil Code § 52(b).

## 38. COUNT IX– GENDER VIOLENCE (Cal. Civ. Code § 52.4)

**(Against. Pete Russell in his individual capacity, the entity defendants vicariously, and Does 1–50.)**

1) Plaintiff incorporates all preceding paragraphs.

2) Defendants committed acts of violence and physical intrusion of a sexual nature motivated by Plaintiff's gender.

3) Such conduct included unwanted touching and exposure intended to degrade Plaintiff.

4) Plaintiff suffered physical pain, emotional trauma, and humiliation.

5) **Damages sought:** General, special, and punitive damages; attorney's fees and equitable relief.

## 39. COUNT X – SEXUAL BATTERY (Cal. Civ. Code § 1708.5)

**(Against Pete Russell in his individual capacity, the entity defendants vicariously, and Does 1–50.)**

1) Plaintiff incorporates all preceding paragraphs.

2) Defendants intentionally caused harmful and offensive sexual contact by forcibly removing Plaintiff's clothing without consent.

3) The contact was intended to humiliate and dominate Plaintiff.

4) Plaintiff sustained physical and emotional injury.

5) **Damages sought:** Compensatory and punitive damages; attorney's fees under Civil Code § 1708.5.

40. **COUNT XI - SEXUAL HARASSMENT (Cal. Civ. Code § 51.9)**

**(Against Pete Russell in his individual capacity, the entity defendants vicariously, and Does 1–50.)**

1) Plaintiff incorporates all preceding paragraphs.

2) Defendants made unwanted sexual comments and engaged in humiliating conduct while in positions of authority over Plaintiff.

3) The conduct was unwelcome and created an intimidating, hostile, and offensive environment.

4) Plaintiff suffered emotional distress, anxiety, and loss of trust in service providers.

5) **Damages sought:** Compensatory, statutory, and punitive damages; attorney's fees under CivilCode§52

41. **COUNTT XII - ASSAULT**

**(Against Pete Russell in his individual capacity, the entity defendants vicariously, and Does 1–50.)**

1) Plaintiff incorporates all preceding paragraphs.

2) Defendants intentionally acted to cause Plaintiff apprehension of imminent harmful or offensive contact.

3) Plaintiff reasonably believed she was about to be harmed.

4) Plaintiff experienced fear and emotional distress.

5) **Damages sought:** General and punitive damages for fear, suffering, and humiliation.

## 42. COUNT XIII – BATTERY

**(Against Pete Russell in his individual capacity, the entity defendants vicariously, and Does 1–50. )**

1) Plaintiff incorporates all preceding paragraphs.

2) Defendants intentionally made harmful and offensive contact with Plaintiff without consent.

3) The contact included grabbing, dragging, and forcible exposure.

4) Plaintiff sustained physical pain and psychological harm.

5) **Damages sought:** Compensatory and punitive damages.

## 43. COUNT XIV - FALSE IMPRISONMENT

**(Against Pete Russell in his individual capacity, the entity defendants vicariously, and Does 1–50.)**

1) Plaintiff incorporates all preceding paragraphs.

2) Defendants unlawfully restrained Plaintiff's freedom of movement through force and intimidation.

3) Plaintiff did not consent and was prevented from leaving the area.

4) Plaintiff experienced fear, helplessness, and humiliation.

5) **Damages sought:** General, special, and punitive damages.

## 44. COUNT XV – NEGLIGENT HIRING, TRAINING, AND SUPERVISION

**(Against Larkin Street Youth Services, St. Anthony's Foundation, and supervisory DOES)**

1) Plaintiff incorporates all preceding paragraphs.

2) Defendants failed to exercise reasonable care in hiring, training, and supervising employees responsible for youth safety.

3) Defendants ignored warning signs of violent or discriminatory behavior.

4) The negligence allowed Plaintiff's assault and harassment to occur.

5) **Damages sought:** Compensatory damages for physical, emotional, and economic harm.

## 45. COUNT XVI– INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

**(Against all Defendants )**

1) Plaintiff incorporates all preceding paragraphs.

2) Defendants engaged in extreme and outrageous conduct intended to cause distress.

3) Such conduct included verbal abuse, humiliation, and discriminatory acts.

4) Plaintiff suffered severe emotional distress manifested by anxiety, humiliation, and trauma.

5) **Damages sought:** General and punitive damages for emotional suffering.

## 46. COUNT XVII – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

1    **(Against entity defendants and Does 1–50.)**

2        1)  Plaintiff incorporates all preceding paragraphs.

3        2)  Defendants owed Plaintiff a duty to act with reasonable care to prevent emotional harm.

4        3)  Defendants' negligence foreseeably caused Plaintiff serious distress.

5

6        4)  Plaintiff experienced emotional trauma, anxiety, and loss of security.

7        5)  **Damages sought:** Compensatory damages for emotional distress.

8

9    **47. COUNT XVIII – NEGLIGENCE**

10   **(Against all Defendants )**

11       1)  Plaintiff incorporates all preceding paragraphs.

12       2)  Defendants owed Plaintiff a duty of care to maintain safe premises and properly

13           supervise employees.

14
       3)  Defendants breached that duty through violence, discrimination, and failure to
15
           intervene.
16

17       4)  The breach caused Plaintiff physical injury and emotional trauma.

18       5)  **Damages sought:** Compensatory damages for physical and emotional harm.

19

20
     **48. COUNT XIX – CONVERSION**
21
     **(Against Pete Russell in his individual capacity, the entity defendants vicariously, and**
22
     **Does 1–50.)**
23

24       1)  Plaintiff incorporates all preceding paragraphs.

25       2)  Defendants wrongfully took or disposed of Plaintiff's personal belongings without

26           consent.

27       3)  Plaintiff was deprived of her property and suffered financial loss.
28

1    4) Defendants' conduct was willful and malicious.

2    5) **Damages sought:** Value of property taken, consequential, and punitive damages.

3

4    49. **COUNT XX – CIVIL THEFT (Cal. Penal Code § 496)**

5
     **( Pete Russell in his individual capacity, the entity defendants vicariously, and Does 1–**
6
     **50.)**
7

8    1) Plaintiff incorporates all preceding paragraphs.

9    2) Defendants knowingly received, withheld, or concealed property unlawfully taken

10       from Plaintiff.

11   3) Defendants acted with intent to permanently deprive Plaintiff of her property.

12   4) Plaintiff suffered emotional and financial harm.

13
     5) **Damages sought:** Treble damages, attorney's fees, and costs under Penal Code §
14
        496(c).
15

16

17

18

19   50. **COUNT XXI – INVASION OF PRIVACY (Cal. Const., Art. I § 1)**

20
     51. **(Against Pete Russell in his individual capacity, the entity defendants vicariously, and**
21
     **Does 1–50.)**
22

23   1) Plaintiff incorporates all preceding paragraphs.

24   2) Defendants intentionally intruded upon Plaintiff's privacy by exposing her body and

25      personal details without consent.

26   3) The intrusion would be highly offensive to a reasonable person.

27
     4) Plaintiff suffered humiliation, emotional distress, and loss of dignity.
28

5) **Damages sought:** General, special, and punitive damages.

## 52. COUNT XXII – FAILURE TO PROTECT (Negligence Theory)

**(Against entity defendants and Does 1–50.)**

1) Plaintiff incorporates all preceding paragraphs.

2) Defendants owed Plaintiff a special duty to provide safety and protect her from foreseeable harm on their premises.

3) Defendants breached that duty by failing to prevent or stop the assault.

4) Plaintiff sustained injuries and emotional trauma as a result.

5) **Damages sought:** Compensatory and punitive damages for physical and emotional harm.

## 53. COUNT XXIV – Premises Liability (Negligence Theory)

**(Against entity defendants and Does 1–50.)**

1. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

1) At all relevant times, the entity defendants owned, leased, operated, managed, or otherwise controlled the premises where the incidents giving rise to this Complaint occurred.

2) The entity defendants owed Plaintiff a duty of reasonable care to maintain the premises in a safe condition, provide adequate supervision, and protect guests and program participants from foreseeable harm, including the acts of employees or agents such as Pete Russell.

3) The entity defendants breached their duty of care by failing to properly train and supervise staff, failing to provide secure facilities, and permitting unsafe or abusive conduct to occur on their property.

4) As a direct and proximate result of the entity defendants' negligence and failure to maintain safe premises, Plaintiff sustained physical injury, emotional distress, and other damages according to proof at trial.

5) The entity defendants are vicariously liable for the acts and omissions of their employees, agents, and contractors under the doctrine of respondent superior and related principles of California law.,

## VII.    PRAYER FOR RELIEF

Plaintiff respectfully requests judgment in her favor and seeks:

1)    Compensatory damages for physical, emotional, and financial harm;

2)    Statutory and punitive damages where authorized;

3)    Injunctive relief requiring training and policy reforms;

4)    Declaratory relief declaring Defendants' conduct unlawful;

5)    Attorney's fees and costs; and

6)    Any other relief the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all issues so triable.

Date: 10/17/25          Sign Name: Emilyana Tussing

Print Name: _____

TUSSING VS LARKIN STREET YOUTH SERVICES ET AL. COMPLAINT